

# NUMBER 13-12-00559-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

GEORGE GARZA III,                                        **Appellant,**

**v.**

THE STATE OF TEXAS,                                      **Appellee.**

### On appeal from the 105th District Court
### of Kleberg County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Longoria
### Memorandum Opinion by Justice Rodriguez

Appellant George Garza III challenges his conviction for burglary of a habitation by commission of aggravated assault. *See* TEX. PENAL CODE ANN. § 30.02(a)(3) (West 2011). By one issue, appellant argues that the evidence was insufficient to support his conviction. We affirm.

## I. Background

Appellant was indicted for capital murder in connection with his alleged involvement in the beating death of Susan Rousseau in her home at the Oasis RV Park in Kingsville, Texas. *See id.* § 19.03(a)(2) (West Supp. 2012). Appellant pleaded not guilty, and his case was tried to a jury.

At trial, the testimony showed that in the fall of 2005, Rousseau was dating a man named Oscar Pena. Rousseau and Pena both worked at the Naval Air Station in Kingsville. Pena's ex-girlfriend, Corina Lam Lopez, was very jealous of Pena's new relationship.[1] Lopez sent Rousseau threatening letters, and the two women had multiple confrontations. Rousseau eventually pressed harassment charges against Lopez in November 2005.

Pena testified that around 11:15 p.m. on December 6, 2005, he spoke with Rousseau while he was still at work. On the call, Rousseau told Pena she was going to Wal-Mart before she went home. Pena got off work at 1 a.m. He tried to call Rousseau but she did not answer her phone. Since Rousseau did not answer, Pena testified that he went home. The next morning Pena went to Rousseau's trailer home and found her dead on the floor of her living room, lying in a pool of blood. Pena called the police, and when they entered the trailer, they found evidence of a forced entry—a piece of foam that had been torn from the trailer's door frame—and a baseball bat near Rousseau's body. The medical examiner testified that based on his autopsy examination of Rousseau, the

---

[1] There was conflicting testimony as to whether Lopez was Pena's former girlfriend or common-law wife.

cause of her death was blunt force trauma to the head. The medical examiner testified that the extent of Rousseau's injuries meant that significant force had been used and that the injuries could have been caused by a baseball bat. Forensic testing of the bat and other items of evidence collected at the scene revealed no fingerprints, DNA matches to suspects, or other leads.[2]

Several law enforcement officers testified about the investigation that occurred on the day that Rousseau's body was discovered. Police questioned Rousseau's neighbors, but none had heard or seen anything. A canvas of the area surrounding Rousseau's trailer revealed that the telephone wires going into Rousseau's home had been pulled loose. After learning of the threats made by Lopez, one set of officers went to Lopez's apartment. Lopez consented to a search of her apartment and vehicle. In the vehicle, the officers found a Wal-Mart receipt, which showed that Lopez had been at Wal-Mart at 11:59 p.m. the previous night. Lopez told the officers that she had gone to Wal-Mart alone, but when video surveillance footage was reviewed by the detectives later in the investigation, it was discovered that Lopez was at Wal-Mart with a man. Officers also examined Lopez's cell phone and, in her call log, found that she had made and received calls to and from appellant around the time it was estimated that Rousseau had been killed. The testimony established that appellant was a friend of Lopez's daughter. The call log also showed that Lopez had made calls to Pena on the previous night. When asked about the calls to appellant, Lopez told officers that appellant was interested

---

[2] We note that one of appellant's chief strategies at trial was calling into question the amount and types of evidence collected at the scene. Appellant's theory in this regard was that there was ample other physical evidence available—blood spatter, fingerprints on surfaces other than the bat—that was not collected or sent in for testing and that this evidence could have proved there were multiple people involved in the attack on Rousseau.

in buying one of Pena's cars and that she was arranging a time for appellant to see the car. The officers then seized several items from Lopez's apartment—some clothes and a stun gun—but no physical evidence connecting Lopez to the crime was found on these items.

In their further investigation during the months following the murder, officers interviewed appellant in May 2006. The officer who conducted that interview testified that appellant's appearance and the way he walked were similar to the man seen with Lopez in the Wal-Mart surveillance video. But when asked whether he had been in Kingsville around December 7, 2005, appellant told the officer that he had not. The officer testified that at this point, because they did not have any other evidence connecting appellant to the crime, she had no reason not to believe appellant.

In 2010, the Texas Rangers were called in to assist with the investigation of Rousseau's murder. Ranger Keith Pauska decided to interview appellant again. Because it was known that appellant worked as a landscaper, Kingsville Police Sergeant Brad Lile contacted appellant and asked if they could meet to discuss a landscaping project. On August 2, 2010, Sergeant Lile and Ranger Pauska went to meet appellant under this guise. They then identified themselves to appellant as law enforcement, and appellant agreed to speak with them. Appellant drove himself to the police department. Once there, appellant was read his *Miranda* rights and gave a recorded and written statement to Ranger Pauska.

In his written statement, which was admitted into evidence at trial, appellant stated that the "homicide in question began with me [being] intoxicated and communicating with

4

[Lopez]."  Appellant stated that he asked Lopez "for a ride and cigarettes."  After she took appellant to buy cigarettes, Lopez took appellant "to a place where [he] attempted to break into a trailor [sic] and steal money"; Lopez told appellant that if he stole the money, "she would take [him] back home."  He was then "involved[ in a heated conflict in which [he] was struck in the back 2 times by what [he] believed to be a pipe."  He "took the pipe away and struck a female 2 or 3 times while she was standing[,] then . . . 2 times when she was laying [sic] on the floor."  Appellant stated that he was supposed to be "stealing money but in the heat of the argument, [he] lost sight of that and merely ran."  Appellant then stated the following:

> [m]any things are unclear but I remember blood on my clothes and being hit but do not remember what I was thinking at the time or why I did what I did but I did not know it was real till [sic] today.  I was under the impression it was a bad dream and to the best of my knowledge[,] this is the most accurate summary of the events of [that] night.  Many things are still fragmented.  There was [sic] lights I remember seeing.  I remember hearing a man's voice.  I also remember running through a field and asking to go to the store but she told me that I had blood all over me and she couldn't stop. . . .  I remember walking around the trailer trying to bust a wire.  I remember a vehicle outside[, an] older model truck.  I remember someone chasing me and yelling at me.  These events occurred during the last few months of the year[,] maybe 5 years ago.  The pipe I believed was used may have actually been a bat.  I do remember striking the lady hard with the weapon and throwing it [when] I started to run out the door.  I did not look back.  I was told that the woman was named Susan.  Corina told me not to tell no one [sic] [and] she took me home.  When I was running I called someone but I don't remember who it was.  I wanted them to pick me up but can't remember what they said.  That was when I met up with Corina on the side of the highway[,] close to a store[,] and she brought me home to Alice to my grandma's house.  When I woke up[,] I threw my bloody clothes . . . in a trashcan [and said nothing].[3]

---

[3] We note that we have reviewed appellant's recorded statements in their entirety—both the interview recorded at the station on August 2, 2010 and an interview conducted at the Oasis RV Park on August 4, 2010.  In the August 2 interview, when appellant describes the object that Rousseau struck him with as a pipe, Ranger Pauska asks appellant if that could have been a bat and appellant agrees.  In the same interview, appellant also told the interviewing officers that around the time of the incident, he had a

Sergeant Lile testified that appellant was allowed to leave after giving his statement, but shortly thereafter, Sergeant Lile obtained a warrant, and appellant was arrested at his home in Alice, Texas.

After the close of evidence and argument by counsel, the jury was charged on both capital murder and the lesser-included offense of burglary of a habitation with the commission of an aggravated assault. *See id.*; *see also id.* § 30.02(a)(3). The jury found Garza guilty of the lesser-included burglary offense. The trial court then sentenced Garza to ninety-nine years' incarceration. This appeal followed.

## II. Standard of Review and Applicable Law

> To determine whether evidence is sufficient to support a conviction, a reviewing court views all the evidence in the light most favorable to the verdict to decide whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). This requires the reviewing court to defer to the jury's credibility and weight determinations because the jury is the "sole judge" of witnesses' credibility and the weight to be given testimony. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. A reviewing court determines whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). When the record supports conflicting inferences, a reviewing court must presume that the fact finder resolved the conflicts in favor of the prosecution and defer to that determination. *See Jackson*, 443 U.S. at 326.

*Garcia v. State*, 367 S.W.3d 683, 686–87 (Tex. Crim. App. 2012).

Legal sufficiency is measured by the elements of the offense as defined by a

---

alcohol and drug problem and would frequently black out. Finally, in this interview, appellant keeps mentioning "a guy" who was in the trailer. Aside from these additional details, appellant's recorded statements are substantively the same as his written statement.

hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* As authorized by the indictment in this case, Garza committed the lesser-included offense of burglary if he "entered . . . [Rousseau's] habitation and commit[ed] or attempt[ed] to commit" aggravated assault against Rousseau. *See* TEX. PENAL CODE ANN. § 30.02(a)(3). Garza committed aggravated assault if he caused "serious bodily injury" to Rousseau or "use[d] or exhibit[ed] a deadly weapon during the commission of the assault." *See id.* § 22.02(a) (West 2011).

### III. Discussion

By one issue, appellant argues that there was "no reliable evidence" that he committed the charged offense. Specifically, appellant argues that the only evidence connecting him to the crime was "a statement obtained by ruse approximately five years after" the crime. And in light of what appellant characterizes as ambiguities and inconsistencies in that statement and the lack of physical evidence implicating him, appellant argues that the evidence was insufficient to support his conviction.

By his own admission, which was corroborated by other evidence adduced at trial, appellant engaged in acts constituting the burglary offense of which he was convicted. *See Salazar v. State*, 86 S.W.3d 640, 644 (Tex. Crim. App. 2002) ("Once the fact that the offense was committed by someone is corroborated by independent evidence, a defendant's own extrajudicial confession, even standing alone, is sufficient to tie him to

7

that crime.").   In his statement, appellant admits to being with Lopez on the night of the murder and breaking into Rousseau's trailer to steal money for Lopez.   Before he entered Rousseau's trailer, appellant states that he pulled some wires loose outside the trailer.   Finally, he admits to using a pipe-like object—what he later agreed could have been a bat—to repeatedly strike Rousseau.   The evidence found by law enforcement at the scene corroborated appellant's confession.   The police found:   that Rousseau's outside telephone lines had been pulled loose in the manner described by appellant in his statement; a baseball bat lying beside Rousseau's body covered in what was determined through forensic testing to be Rousseau's blood; and a piece of foam missing from Rousseau's door frame, consistent with appellant's statement that he broke into the trailer.   Furthermore, the evidence at trial clearly established a link between appellant and Lopez, who had previously threatened Rousseau.   The call log on Lopez's cell phone showed calls to and from appellant on the evening of the killing, both before, during, and after the approximate time of the crime, and security video footage from Wal-Mart showed that a man matching appellant's appearance was with Lopez shortly before midnight on the night of the crime.   This corroborates appellant's statement that he broke into Rousseau's trailer at Lopez's behest.   In short, the evidence at trial established not only that *someone* committed the crime, but that appellant himself committed the crime.   *See id.*

Appellant points to the portions of his statements in which he said that he was "unclear" about what happened that night, was not sure that the incident occurred, and recalls hearing a man's voice as he was running away and argues that his confessions

8

were therefore unreliable because they contained ambiguities and inconsistencies. We disagree. Read in its entirety, the written statement, in particular, would have allowed a rational jury to conclude that the following transpired that night: Lopez picked up appellant from a party and drove him to a store (likely, Wal-Mart) to buy cigarettes; she then told him that he had to break into a woman named Susan's trailer and steal some money before she would take him home; appellant did as Lopez asked, but was unexpectedly confronted by Susan and severely beat her in the fight that ensued; appellant fled the trailer, contacted Lopez, and Lopez eventually picked up appellant, who was covered in blood; appellant went home, discarded the evidence of his crime, and remained silent until interrogated in detail by Ranger Pauska. It would also have been rational for the jury to conclude that none of the above was entirely clear in appellant's mind because he was heavily intoxicated when it occurred. Regardless, even assuming that the portions of the statements identified by appellant were ambiguous and inconsistent, these are matters bearing directly on the weight and credibility of the evidence, and it was solely within the jury's province to resolve weight and credibility issues. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. Under the law, we are prohibited from second-guessing the jury's determination in this regard. *See Jackson*, 443 U.S. at 319, 326.

Appellant also argues that his statements were unreliable evidence because they were obtained through trickery. Specifically, appellant complains that Ranger Pauska and Sergeant Lile lied to appellant to arrange a meeting with him (i.e., that they were interested in his landscaping services) and that Ranger Pauska suggested certain

9

answers to appellant during their interview (i.e., that it might have been a bat and not a pipe that appellant used to hit Rousseau). However, there is no evidence in the record that the deception employed by the officers to arrange a meeting with appellant was calculated to produce a false confession. *See Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997) ("Trickery or deception does not make a statement involuntary unless the method was calculated to produce an untruthful confession or was offensive to due process."). And appellant does not explain how Ranger Pauska's suggestions tricked him into making a false confession—he had already confessed to beating Rousseau with what he believed to be a pipe. *See id.* Ranger Pauska's suggestion did not alter the content of appellant's confession in any material way.

Finally, appellant suggests that his statement was involuntary. But appellant failed to make this complaint in the trial court. *See* TEX. R. APP. P. 33.1(a). And even if he had, the admissibility of the statement had no bearing on its sufficiency to support the verdict. *See Bobo v. State*, 843 S.W.2d 572, 575–76 (Tex. Crim. App. 1992) ("When evaluating the sufficiency of the evidence the appellate court must look at all the evidence, whether properly or improperly admitted.") (citations omitted); *see also Jackson v. Denno*, 378 U.S. 368, 386 n.13 (1964) (noting that, when it is submitted to the jury as evidence, whether a confession was voluntary is but one of many factors the jury can consider in judging the weight and credibility of the evidence). So we are not persuaded by appellant's argument in this regard.

Having reviewed all the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found that appellant entered Rousseau's

10

habitation and caused her serious bodily injury through the use of a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 22.02(a), 30.02(a)(3); *Garcia*, 367 S.W.3d at 686–87 (citations omitted). The evidence supporting his conviction was therefore sufficient. Appellant's sole issue is overruled.

### IV. Conclusion

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 21st
day of November, 2013.

11